UNITED STATES DISTRICT COURT
DISTRICT OF MASSACUSETTS

| | |
|---|---|
| AVA SUNSHINE JEMISON, CIENNA VIOLET JEMISON, *and* BRANDON CASH JEMISON,<br><br>    *Plaintiffs,*<br><br>*v.*<br><br>STEVEN CRAIG JEMISON, *individually, as Custodian for* AVA SUNSHINE JEMISON, CIENNA VIOLET JEMISON, *and* BRANDON CASH JEMISON, *as member and manager of* ACK DREAMS, LLC, *and as member and manager of* ACK CRAZY, LLC<br><br>    *Defendant.* | C.A. NO.:<br><br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiffs, Ava Sunshine Jemison, Cienna Violet Jemison, and Brandon Cash Jemison, by and through their undersigned counsel, hereby file this Complaint against Defendant Steven Craig Jemison, individually, as Custodian for Ava Sunshine Jemison, Cienna Violet Jemison, and Brandon Cash Jemison, as member and manager of ACK Dreams, LLC, and as member and manager of ACK Crazy, LLC alleging as follows:

## **JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant, and the amount in controversy exceeds $75,000.00. Diversity of citizenship exists because Plaintiffs are citizens of the State of California and State of Utah, and Defendant is a citizen the Commonwealth of Massachusetts.

2. Pursuant to 28 U.S.C. § 1391(b)(2), venue properly lies in this Judicial District as a substantial part of the events or omissions giving rise to the claim occurred and a substantial part of property that is the subject of the action is situated in this Judicial District.

<div align="center">**PARTIES**</div>

3. Plaintiff Ava Sunshine Jemison is an individual, having attained the age of twenty (22) years, and a resident of the State of Utah.

4. Plaintiff Cienna Violet Jemison is an individual, having attained the age of nineteen (19) years, and a resident of the State of Utah.

5. Plaintiff Brandon Cash Jemison, having attained the age of seventeen (17) years, is an individual and a resident of the State of California.

6. Defendant Steven Craig Jemison is an individual with a last and usual address of 4 Lavender Lane, Nantucket, Nantucket County, Massachusetts.

7. Defendant Steven Craig Jemison as member and manger of ACK Crazy, LLC, a foreign limited liability company, with a principal place of business of 4 Lavender Lane, Nantucket, Nantucket County, Massachusetts.

<div align="center">**FACTUAL ALLEGATIONS**</div>

**Background and Childrens' Gifts**

8. William H. Jemison ("Mr. Jemison") and Carolyn Heyman Jemison were married and had four (4) children, including Steven Craig Jemison ("Steven").

9. Steven is unmarried and has three (3) children: Ava Sunshine Jemison ("Ava"), Cienna Violet Jemison ("Cienna"), and Brandon Cash Jemison ("Brandon") (collectively, "Children").

10. Mr. Jemison owned and operated a successful family business called Heyco, Inc. ("HEYCO").

11. From 2002 through 2015, the Children were gifted 22,773 shares (or 7,591 shares per child) of HEYCO stock (collectively "Stocks").

12. Upon information and belief, from 2002 through 2015, the Children received dividend payments from their HEYCO stock in the following amounts: Ava ($372,536.00), Cienna ($371,587.00), and Brandon ($120,025.00) (collectively, "Dividends").

13. At the time of the gifts, the Children were minors and, as such, the gifted Stocks and resulting Dividends were received, held, and controlled by Steven as custodian for the Children.

14. In 2016, HEYCO was sold.

15. From November 2016 through November 2020, the Childrens' Stock was liquidated resulting in cash assets belonging to the Children in the total amount of $7,077,393.00 (or $2,359,131.00 per child).

16. At the time of the liquidations, the Children were minors and, as such, the cash assets were received, held, and controlled by Steven as custodian for the Children.

17. Upon information and belief, Steven, as custodian for the Children, received, holds, and controls personal property belonging to the Children in the total amount of $7,941,541.00 (collectively, "Childrens' Money" or "Custodial Property").

18. From November 2016 through November 2020, Steven, personally, received cash distributions from the sale of HEYCO in the total amount of $13,510,539.00.

**ACK Crazy, LLC**

19.  On September 21, 2017, Steven created ACK Crazy, LLC ("ACK Crazy") as a Colorado limited liability company.

20. On October 10, 2017, Steven, individually, and as custodian for the Children, executed an operating agreement for ACK Crazy ("ACK Crazy Operating Agreement") **(a true and accurate copy of the ACK Crazy Operating Agreement is incorporated herein by reference and attached hereto as Exhibit "A").**

21. Pursuant to the terms of the ACK Crazy Operating Agreement:

   a. the members and their ownership interest are Steven (0.003%), Ava (33.3323%), Cienna (33.3323%) and Brandon (33.3323%). *See,* ACK Crazy Operating Agreement, Section 3.3.

   b. the members' initial capital contributions were Steven ($6,120.00), Ava ($677,960.00), Cienna ($677,960.00), and Brandon ($677,960.00). *See*, ACK Crazy Operating Agreement, Section 2.1.

   c. the initial manager is Steven and, while Steven remains a member, he shall remain as the sole manager.

22. Steven did not consult, advise, or receive consent from the Children prior to his creation of ACK Crazy, his execution of ACK Crazy Operating Agreement on their behalf, or his investment of $2,033,880.00 of the Childrens' Money as initial capital contributions to ACK Crazy.

23. On October 23, 2017, Steven, as manager of ACK Crazy, purchased the real property located at 9 West Chester Street, Nantucket, Nantucket County, Massachusetts ("Property #1") for consideration of $2,000,000.00.

24. Steven, as manager of ACK Crazy or as custodian, did not consult, advise, or receive consent from the Children prior to ACK Crazy's purchase of Property #1.

25. From October 2017 through December 2022, Steven, as custodian for the Children, invested a total of at least $4,184,751.00 (or $1,394,917.00 per child) of the Childrens' Money in or for the benefit of ACK Crazy.

26. Steven did not consult, advise, or receive consent from the Children prior to any of his investments of the Childrens' Money in or for the benefit of ACK Crazy.

27. Property #1 is a residential rental property that generates significant rental income.

28. Property #1 currently rents for approximately $20,000.00 per week and, to date, has generated at least $340,331.00 in gross rental income. This is not inclusive of Property #1's gross rental income for 2023 and 2024.

29. On May 3, 2023, ACK Crazy was registered as a foreign limited liability company with the Massachusetts Secretary of Commonwealth (**a true and accurate copy of the Foreign Limited Liability Company Application for Registration is incorporated herein and attached hereto as Exhibit "B").**

30. On March 18, 2024, Children, by and through their counsel, made demand upon Steven, as manager of ACK Crazy and/or custodian for the Children, to provide a full and complete accounting of his custodianship of the Childrens' Money and his management of ACK Crazy.

31. To date, Steven, as manager of ACK Crazy and/or custodian for the Children, has failed and refused to account for his custodianship of the Childrens' Money and/or his management of ACK Crazy.

**ACK Dreams, LLC**

32. On July 30, 2018, Steven created ACK Dreams, LLC ("ACK Dreams") as a Massachusetts limited liability company.

33. On July 30, 2018, Steven, individually, and as custodian for the Children, executed an operating agreement for ACK Dreams ("ACK Dreams Operating Agreement") **(a true and accurate copy of the ACK Dreams Operating Agreement is incorporated herein by reference and attached hereto as Exhibit "C").**

34. Pursuant to the terms of the ACK Dreams Operating Agreement:

    a. the members and their ownership interest were Steven (1%), Ava (33%), Cienna (33%) and Brandon (33%). *See,* ACK Dreams Operating Agreement, Exhibit A.

    b. the initial/sole manager was Steven.

35. In or around July 2018, Steven, as custodian for the Children, invested $939,999.00 (or $313,333.00 per child) of the Childrens' Money in ACK Dreams.

36. Steven did not consult, advise, or receive consent from the Children prior to his creation of ACK Dreams, his execution of ACK Dreams Operating Agreement on their behalf, or his investment of $939,999.00 of the Childrens' Money as initial capital contributions.

37. On July 31, 2018, Steven, as manager of ACK Dreams, purchased the real property located at 141 Orange Street, Nantucket, Nantucket County, Massachusetts ("Property #2") for consideration of $950,000.00.

38. Steven, as manager of ACK Dreams or as custodian, did not consult, advise, or receive consent from the Children prior to ACK Dreams' purchase of Property #2.

39. On April 20, 2022, Steven, as manager of ACK Dreams, sold Property #2 for consideration of $1,700,000.000.

40. Steven, as manager of ACK Dreams or as custodian, did not consult, advise, or receive consent from the Children prior to ACK Dreams' sale of Property #2.

41. The net proceeds from the sale of Property #2 were $1,652,964.12 (**a true and accurate copy of Property #2 Settlement Statement is incorporated herein and attached hereto as Exhibit "D").**

42. Upon information and belief, after payment of taxes and other expenses, the Children were entitled to net sale proceeds in the total amount of $1,635,933.00 (or $545,311.00 per child) ("ACK Dreams Sale Proceeds").

43. Steven, as manager of ACK Dreams and/or as custodian for the Children, failed and refused to make any ACK Dreams Sale Proceeds available to the Children.

44. On December 29, 2023, ACK Dreams was dissolved.

45. On March 18, 2024, Children, by and through their counsel, made demand upon Steven to provide a full and complete accounting of his custodianship of Childrens' Money and his management of ACK Dreams.

46. To date, Steven, as manager of ACK Dreams and/or custodian for the Children, has failed and refused to account to the Children, individually or as members of ACK Dreams, for his custodianship of Childrens' Money and/or his management of ACK Dreams.

**Custodial Accounts**

47. Following the sale of ACK Dreams, Steven, as manager of ACK Dreams and/or custodian for the Children, deposited the ACK Dreams Sale Proceeds into ACK Crazy.

48. Thereafter, in or around December 2022, Steven, as manager of ACK Crazy and/or custodian for Cienna and Brandon, transferred $1,134,990.00 (or $567,495.00 per child) of the ACK Dreams Sale Proceeds to brokage accounts for their benefit.

49. Further, in or around January 2023, Steven, as manager of ACK Crazy and/or custodian for Ava, transferred Ava's share of the ACK Dreams Sale Proceeds (i.e., $567,495.00) to

a brokerage account in the name of ACK Crazy, which he maintains exclusive custody and control.

50. Upon information and belief, Steven, as manager of ACK Crazy and/or custodian for Ava, purposefully transferred Ava's share of the ACK Dreams Sale Proceeds to the ACK Crazy brokage account as a deliberate means of preventing his loss of custody and control of the monies therein upon Ava's 21st birthday (i.e., June 20, 2023).

51. Upon information and belief, Steven, as custodian for the Children, transferred Childrens' share of the ACK Dreams Sale Proceeds (i.e., $1,702,485.00) to brokerage accounts (collectively, "Custodial Accounts") for the purpose of exercising exclusive custody and control of the monies therein.

52. Following the creation of the Custodial Accounts, Steven, as custodian for the Children, invested the monies therein in highly speculative and unsuitable investment products.

53. Steven, as custodian, did not consult, advise, or receive consent from the Children prior to his creation of the Custodial Accounts or implementation of his risky investment strategy.

54. To date, the Custodial Accounts have experienced losses of at least $955,911.00 (or approximately $318,637.00 per child).

55. Nonetheless, Steven, as custodian for the Children, has failed and refused to take any action to mitigate the prolonged, on-going, and substantial losses incurred by the Custodial Accounts.

56. From June 20, 2023, to date, Steven, as custodian, has failed and refused to provide Ava with her (significantly depleted) custodial account or her share of the Childrens Money despite Ava having attained the age of twenty-one (21) years.

57. On March 18, 2024, Children, by and through their counsel, made demand upon Steven to account for his custodianship of the Custodial Accounts and to relinquish all control of the Custodial Accounts and any other real or personal belonging to the Children in his custody.

58. In response, Steven, as custodian for the Children, stated that it "would be disadvantageous" to cash out the Custodial Accounts at this time despite significant monthly losses for the last year and beyond.

59. To date, Steven, as custodian for the Children, has failed and refused to account to the Children for his custodianship of the Custodial Accounts, take any action to mitigate the significant losses incurred by the Custodial Accounts, and/or relinquish all control of the Custodial Accounts and any other real or personal property belonging to the Children in his custody.

## CAUSES OF ACTION

## COUNT I
## BREACH OF FIDUCIARY DUTY

60. Plaintiffs repeats and reincorporates by reference the allegations contained in the preceding paragraphs.

61. Defendant, as custodian for the benefit of Plaintiffs, and as a minority member/manager of the closely held limited liability companies known as ACK Dreams, LLC, and ACK Crazy, LLC, has fiduciary duties and obligations Plaintiffs.

62. Defendant breached his fiduciary duties to Plaintiffs by, including but not limited to, engaging in self-dealing, failing to protect Custodial Property, failing to maximize the value of Custodial Property, failing to act prudently and exercise reasonable care regarding his custodianship of the Custodial Property, and failing and refusing to account for custodianship of the Custodial Property, Custodial Accounts, and/or any other the real and

personal property belonging to Plaintiffs, and his management of ACK Dreams and ACK Crazy.

63. As a direct and proximate result of Defendant's breach, Plaintiffs have, and continue, to experience significant financial harm and damage.

WHEREFORE, as to Count I, Plaintiffs seek damages and relief in a manner and amount to be determined at trial, an award of attorneys' fees and costs, applicable interest, and any other amount or relief that this Court shall deem reasonable and just, including the imposition of a resulting trust and/or constructive trust for the benefit of Plaintiffs.

## COUNT II
## TORTIOUS INTERENCE WITH EXPECTANCY

64. Plaintiffs repeats and reincorporates by reference the allegations contained in the preceding paragraphs.

65. Plaintiffs are the owners of the Custodial Property and therefore maintain a legally protected expectancy therein.

66. Defendant's intentional unlawful acts and omissions, including without limitation his seizing control of and diverting Plaintiffs' assets, specifically the Custodial Property, as alleged above without limitation, directly interfered with Plaintiffs expectancy as the recipient of a gift or gifts.

67. Defendant's interference remains on-going and continuous.

68. As a direct and proximate result of Defendant's interference, Plaintiffs have, and continue to experience significant financial harm and damage.

WHEREFORE, as to Count II, Plaintiffs seek damages and relief in a manner and amount to be determined at trial, an award of attorneys' fees and costs, applicable interest, and any other amount

or relief that this Court shall deem reasonable and just, including the imposition of a resulting trust and/or constructive trust for the benefit of Plaintiffs.

## COUNT III
## UNJUST ENRICHMENT

69. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

70. Plaintiffs, by virtue of their status as the owners of Custodial Property, have conferred a benefit upon Defendant.

71. Defendant appreciated this benefit by using the Custodial Property for his own use, enjoyment, and benefit.

72. Defendant's acceptance and retention of the benefit to the detriment of Plaintiffs would be wholly inequitable and result in Defendant's unjust enrichment.

73. As a direct and proximate result of the acts and omission of Defendant, Plaintiffs have, and continue to experience significant financial harm and damage.

WHEREFORE, as to Count III, Plaintiffs seek damages and relief in a manner and amount to be determined at trial, an award of attorneys' fees and costs, applicable interest, and any other amount or relief that this Court shall deem reasonable and just, including the imposition of a resulting trust and/or constructive trust for the benefit of Plaintiffs.

## COUNT IV
## CONVERSION

74. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

75. Plaintiffs were the recipients of gifts of HEYCO stock (and their monetary equivalent) and therefore maintain a legally protected interest therein and right to possession.

76. Defendant converted the Custodial Property for his own use, without right, by appropriating the Custodial Property, purposefully depriving Plaintiffs of use and

enjoyment of the Custodial Property, and/or causing a significant diminishment in value of the Custodial Property.

77. As a direct and proximate result of the acts and omission of Defendant, Plaintiffs have, and continue to experience significant financial harm and damage.

WHEREFORE, as to Count III, Plaintiffs seek damages and relief in a manner and amount to be determined at trial, an award of attorneys' fees and costs, applicable interest, and any other amount or relief that this Court shall deem reasonable and just, including the imposition of a resulting trust and/or constructive trust for the benefit of Plaintiffs.

## COUNT V
### ACTION FOR ACCOUNTING

78. Plaintiffs repeats and reallege each and every allegation above as if set forth in full herein.

79. Plaintiffs desire to inspect the legal and financial documents of ACK Dreams, LLC, and ACK Crazy, LLC, as well as legal and financial documents related to/arising from Defendant's custodianship of the Custodial Property, Custodial Accounts, and/or any other the real and personal property belonging to Plaintiffs, to determine whether any other improper assignment, conveyance, disposition, or any other transfer of occurred.

WHEREFORE, as to Count V, Plaintiffs seeks an order of the Court compelling Defendant to fully account for his management of ACK Dreams, LLC, his management of ACK Crazy, LLC, his custodianship of the Custodial Property, his custodianship of the Custodial Accounts, and his custodianship of any other real and personal property belonging to Plaintiffs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, Ava Sunshine Jemison, Cienna Violet Jemison, and Brandon Cash Jemison, hereby pray for the following relief:

1. That on Count I, the Court enters a Judgment against Defendant for relief in a manner and amount determined at trial, an award of attorneys' fees and costs, applicable interest, and any other amount or relief that this Court shall deem reasonable and just, including the imposition of a resulting trust and/or constructive trust for the benefit of Plaintiffs;

2. That on Count II, the Court enters a Judgment against Defendant for relief in a manner and amount determined at trial, an award of attorneys' fees and costs, applicable interest, and any other amount or relief that this Court shall deem reasonable and just, including the imposition of a resulting trust and/or constructive trust for the benefit of Plaintiffs;

3. That on Count III, the Court enters a Judgment against Defendant for relief in a manner and amount determined at trial, an award of attorneys' fees and costs, applicable interest, and any other amount or relief that this Court shall deem reasonable and just, including the imposition of a resulting trust and/or constructive trust for the benefit of Plaintiffs;

4. That on Count IV, the Court enters a Judgment against Defendant for relief in a manner and amount determined at trial, an award of attorneys' fees and costs, applicable interest, and any other amount or relief that this Court shall deem reasonable and just, including the imposition of a resulting trust and/or constructive trust for the benefit of Plaintiffs

5. That on Count V, the Court enters an Order compelling the Defendant fully account for his for his management of ACK Dreams, LLC, his management of ACK Crazy, LLC, his custodianship of the Custodial Property, his custodianship of the Custodial Accounts, and his custodianship of any other real and personal property belonging to Plaintiffs; and

6. Such other and further relief as this Court deems necessary and just.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on each claim asserted or hereafter asserted, and on each

defense asserted or hereafter asserted by any Defendant.

<div style="margin-left:40%;">

Respectfully submitted,
PLAINTIFFS,
By their Attorneys,

*/s/ Brian D. Bixby*
Brian D. Bixby, Esq. (044140)
Peter G. Thomas, Esq. (698402)
BURNS & LEVINSON, LLP
125 High Street
Boston, MA 02110
Tel: (617) 345-3000
bbixby@burnslev.com
pthomas@burnslev.com

</div>

Dated: July 9, 2024

14